IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Mark C. Brookes, : | |
|     Plaintiff | : Case No. 2:13-cv-00516 |
| v. | : Judge Sargus |
| Myron Shank, M.D., *et al.*, | : Magistrate Judge Abel |
|     Defendants | |
| | : |

**REPORT AND RECOMMENDATION**

Plaintiff Mark C. Brookes,[1] administrator of the Estate of Gregor Otis Stamper, filed this prisoner civil rights action on behalf of the decedent, Stamper, alleging that defendants were deliberately indifferent to Stamper's serious medical needs. This matter is before the Magistrate Judge in accordance the provisions of 28 U.S.C. §636(b)(1)(B) for a report and recommendation on defendants DesMarais, Chambers-Smith, Hudson and Eddy's September 19, 2013 motion for judgment on the pleadings (doc. 10)[2] and defendant Shank's September 19, 2013 motion for judgment on the pleadings (doc. 11).

I. **Allegations in the Complaint**

In 2008, Stamper began to experience burning pain in his back, hands and neck and numbness in both his feet. Compl. at ¶ 17. In August 2008, the Allen Correctional Institution ("ACI") Medical Director, Dr. Ashwin Amin, prescribed Neurontin. *Id.* Neurontin is

---

[1] The term "plaintiff" in this Report and Recommendation refers to Stamper, rather than Brookes.

[2] Plaintiff does not oppose defendants DesMarais, Chambers-Smith, Hudson and Eddy's September 19, 2013 motion for judgment on the pleadings (doc. 10).

effective at treating nerve pain. *Id.* at ¶ 18. Initially, Neurontin was effective in controlling plaintiff's pain. In 2009, Stamper's pain increased and spread throughout his extremities making his nerves feel like they were on fire. *Id.* at ¶ 19. In February 2009, Stamper complained of severe chest pain radiating to his neck, jaw, hands and feet. Testing at the Ohio State University Medical Center revealed that Stamper was suffering from severe peripheral neuropathy. Plaintiff was prescribed Neurontin and Indocin. *Id.* at ¶ 20. When Stamper returned to ACI, Dr. Amin prescribed Neurontin and Ultram. *Id.* at ¶ 21. A neurologist at the Corrections Medical Center ("CMC") diagnosed Stamper with acute peripheral neuropathy and recommended an increased dosage of Neurontin. *Id.* at ¶ 22. A September 2009 electrodiagnostic nerve conduction study confirmed that Stamper had peripheral neuropathy. *Id.* at ¶ 23.

In July 2009, Dr. Shank was hired and became Stamper's treating physician. *Id.* at ¶ 26. During the summer of 2009, Stamper required more pain medication than Dr. Shank would prescribe. Stamper traded a bag of cookies for two pain pills. Stamper planned on taking those pills at night when his pain was especially bad. *Id.* at ¶ 27. Corrections officers found the pills in his cell and issued a conduct report. The Rules Infraction Board ("RIB") recommended that Stamper's medications be crushed or liquefied. Despite that recommendation, Dr. Shank discontinued his Neurontin and Ultram on August 5, 2009. *Id.* at ¶ 28. From August 2009 through June 2010, Stamper suffered immensely as a result of Dr. Shank discontinuing his medications. *Id.* at ¶ 29.

During site visits to ACI in May and June 2010, Dr. Ron Shansky, the chief physician and monitor of a federal class action settlement directed toward improving health care for Ohio prisoners, put plaintiff back on Neurontin, but not Ultram, on the condition that Stamper enrolled in a substance abuse program. *Id.* at ¶ 32. After Stamper's initial interview with Recovery Services, the program's director, John Hall, determined that Stamper was not an addict and did not require substance abuse treatment. *Id.* at ¶ 34.

In April 2011, Dr. Shank discontinued plaintiff's Neurontin on the basis that he had refused substance abuse treatment. *Id.* at ¶ 40. Stamper begged for his medications, but Dr. Shank refused to provide it to him. *Id.* at ¶ 41. Stamper did not received any medication from April 26, 2011 until his death on June 1, 2011. *Id.* at ¶ 42. Without medication, Stamper suffered constant excruciating pain, which constituted a serious medical condition. *Id.* at ¶¶ 43-44. Despite his awareness of Stamper's serious medical condition, Dr. Shank refused to prescribe his Neurontin. *Id.* at ¶ 45.  On May 31, 2011, Dr. Shank canceled Stamper's scheduled doctor's appointment. *Id.* at ¶ 47. On June 1, 2011, prison officials found Stamper unresponsive in his cell. He had committed suicide by hanging. *Id.* at ¶ 48.

Shortly after Stamper's suicide, Dr. Shank was placed on administrative leave. A subsequent investigation concluded that Dr. Shank's care was deficient. *Id.* at ¶ 49.

## II. Arguments of the Parties

### A. Defendant Dr. Myron Shank

Defendant argues that Stamper's claim against Dr. Shank is time-barred. In actions brought under 42 U.S.C. § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action. In this case, the

3

limitations period would have begun to run when Stamper knew or had reason to know of his alleged injury and not when the personal representative of his estate became aware of the injury. For claims based upon a deliberate indifference to serious medical needs, the cause of actions accrues when the prisoner is denied medical care. Mere passive inaction does not toll or change when a cause of action accrues. Stamper's medication was discontinued by another health care provider on April 13, 2011, and any alleged violation occurred then. The two-year statute of limitations began to run when his medication was discontinued, and plaintiff did not file suit until May 29, 2013–more than two years after his cause of action had accrued. The fact that this case has been brought by plaintiff's personal representative is irrelevant because the cause of action is personal to Stamper. When Stamper's representative discovered any purported wrongdoing does not change the accrual date nor toll the statute for any period.

Even assuming that Stamper's claim was not completely time-barred, the only acts that could arguably be considered as part of his claim were those acts taken by Dr. Shank within the two-year period immediately preceding the filing of the complaint. The only allegation made concerning Dr. Shank's treatment of Stamper that occurred within this two-year period was that on May 31, 2011, Dr. Shank cancelled a scheduled appointment that Stamper had requested.  Defendant maintains that the Court may consider Stamper's medical records without converting its motion for judgment on the pleadings to a motion for summary judgment because the records were referenced in plaintiff's complaint and are central to his claim.

4

Defendant further argues that Stamper failed to plead a plausible claim for relief against Dr. Shank. According to defendant. Stamper has failed to allege facts establishing that Dr. Shank had the subjective mental state of deliberate indifference necessary to state a plausible claim for relief. In the context of a prison suicide, the prison official must be cognizant of the significant likelihood that the inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing the act. Defendant maintains that there is no constitutional right to an investigation, and failing to investigate the wrongs of others is also not actionable. Furthermore, in a prison setting, the decision to discontinue pain medication because of concerns of abuse of such medicine does not amount to deliberate indifference to serious medical needs. Plaintiff acknowledges that he violated the substance abuse policy of the institution.

Although Dr. Shank discontinued the medication, another healthcare provided, Dr. Shansky, reviewed his medical records and reinstated the medications. Stamper was prescribed his medication for nearly a year, until Dr. Shank discontinued the medication because Stamper had allegedly refused substance abuse treatment. At most, plaintiff can argue that Dr. Shank should have investigated the substance abuse issue further, but he was under no constitutional or legal obligation to do so. Dr. Shank's reliance on the medical records was reasonable, and plaintiff cannot establish that Dr. Shank was deliberately indifferent.

Defendant further argues that he is entitled to qualified immunity because he has not violated any clearly established constitutional right of Stamper. Case law is clear that

5

termination of an inmate's medications based upon suspicion of substance abuse fails to establish deliberate indifference, and a mistake of fact does not violate the Constitution.

### B. Plaintiff Gregory Otis Stamper

Plaintiff argues that he has alleged facts demonstrating that Dr. Shank was deliberately indifferent to Stamper's serious medical need, and that this claim is not time-barred from the period of May 29, 2011 to June 1, 2011 when Stamper committed suicide. Brookes concedes that the portion of the claim alleging deliberate indifference before Mary 31, 2011 is time-barred. Plaintiff further argues that Dr. Shank is not entitled to qualified immunity.

Plaintiff argues that he has pled facts establishing the objective prong of Stamper's constitutional claim because pain can be a sufficiently serious medical need for purposes of an Eighth Amendment claim. Stamper suffered burning pain in his back, hands and neck and numbness in both feet. In 2009, Stamper was diagnosed with severe peripheral neuropathy. An OSU neurologist recommended an increase in his Neurontin prescription in addition to adding a pain killer. Plaintiff further maintains that he pleaded specific allegations supporting the fact that Dr. Shank was deliberately indifferent to Stamper's peripheral neuropathy diagnosis and need for pain medication. Despite the recommendation by the Rules Infraction Board that plaintiff's medications be crushed, Dr. Shank discontinued the medication completely. Stamper was never offered or prescribed an alternative pain medication, and he continued to seek treatment for his pain. Dr. Shank, however, canceled Stamper's scheduled appointment and refused to see him. Dr. Shank refused to explore any alternative treatment for plaintiff's pain.

Plaintiff argues that there is no Sixth Circuit case law addressing the facts alleged by plaintiff. According to plaintiff, Dr Shank was aware that he was suffering from constant and agonizing pain, yet he discontinued his medication and refused to speak with Stamper and disregarded the risk that Stamper would continue to suffer without treatment. Plaintiff argues that his claim is not time-barred because his cause of action accrued when he was denied medical care. Although Dr Shank was deliberately indifferent to plaintiff's need for pain medication in April 2011, he was also deliberately indifferent when he canceled Stamper's scheduled appointment on May 31, 2011 and refused to see him despite his numerous reports of agonizing pain and his need for pain medication.

Plaintiff further argues that Dr. Shank is not entitled to qualified immunity. Qualified immunity is a question of law, and if there is a disagreement as to the facts the court must consider the evidence in the light most favorable to plaintiff. Plaintiff maintains that there are genuine issues of fact regarding the subjective component of his Eighth Amendment claim. Plaintiff also contends that the a delay in the provision of medical treatment can constitute deliberate indifference to a clearly established constitutional right.

III.    **Judgment on the Pleadings**

In ruling on a motion for judgment on the pleadings, the Court accepts all well-pleaded material allegations of the complaint as true. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Id.* This is the same standard applied in deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Id.*

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007) (citing *Bell v. Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-124 (6th Cir. 1971). In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail, *see McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155-56.

To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action;

they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, 550 U.S. at 555.

### IV. Discussion

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. There is both an objective and a subjective component to a cruel and unusual punishment claim. *Scott v. Ambani,* 577 F.3d 642, 648 (6th Cir. 2009). The objective component requires a plaintiff to demonstrate that the medical need was "serious." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

To meet the subjective component, a complaint must plead "facts which show that the prison official had a 'sufficiently culpable state of mind.' [*Brennan v.*] *Farmer,* 511 U.S. [825], 834 [(1994)]; *Comstock* [*v. McCrary,* 273 F.3d 693], 703 [(6th Cir. 2001)." *Scott*, 577 F.3d at 648. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the

9

inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Nonetheless, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)(quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998). A complaint states a claim when it alleges that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake,* 537 F.2d at 860; *Scott v. Ambani,* 577 F.3d at 648.

Here, plaintiff has adequately stated a claim upon which relief can be granted. The complaint alleges that plaintiff suffered excruciating pain. Pain and suffering may be a sufficiently serious medical need for purposes of an Eighth Amendment claim for denial of medical care. *See, e.g., Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009). Here, plaintiff's medically documented severe peripheral neuropathy and the corresponding pain he suffered as a result satisfies the objective component of his Eighth Amendment claim. Dr. Shank had previously discontinued Stamper's medication and had been instructed to

reinstate it. After Dr. Shank discontinued his medication in April 2011, plaintiff repeatedly reported that he was in pain and requested medication to control it. If the trier of fact determines that these allegations are credible, the allegations could demonstrate that Dr. Shank had a sufficiently culpable state of mind and show deliberate indifference to plaintiff's serious medical need. In relying on these allegations, however, I do not find that Dr. Shank's discontinuation of the medications in April 2011 was itself actionable on the basis that any such claim is time-barred. However, Dr. Shank's knowledge of these past events coupled with his refusal to see Stamper in May 2011 could demonstrate the subjective component of plaintiff's Eighth Amendment claim. The act of refusing to see Stamper in spite of his continued complaints of pain, standing alone, is actionable. The allegations in the complaint detail Stamper's increasing desperation, and a trier of fact could find that Dr. Shank knew of and disregarded the risk associated with not treating plaintiff's pain when he canceled plaintiff's appointment.

Qualified Immunity. Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals from liability. *Pearson v. Callahan*, 555 U.S. 223, 231(2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). The doctrine balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. The

accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.*

Analysis of qualified immunity is a two-step process. First, considering the allegations in the light most favorable to the party injured, the court must determine whether a constitutional right has been violated. Second, the court must consider whether that right was clearly established. *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2009). The order of this inquiry is not mandatory, nor does a court need to reach both steps of the analysis. *Pearson*, 555 U.S. at 236. "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306. 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)).

For a right to be clearly established, "the contours of [the] right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). "In deciding whether a right has been clearly established, the Supreme Court has 'repeatedly' warned lower courts not to define the right at 'a high level of generality.'" *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. At 2084). Therefore, going "down the stairs of abstraction to a concrete, particularized description of the right . . . .[t]hough not too far down," the right at issue here is defined as the right to medical treatment for significant pain resulting from a serious medical condition. The magistrate judge finds that the contours of that right are sufficiently clear that every reasonable prison official would have understood that failing to treat an inmate's significant pain violated the Eighth

12

Amendment. Furthermore, plaintiff has alleged sufficient facts to indicate that Dr. Shank's alleged conduct was objectively unreasonable in light of clearly established constitutional rights.

V.    **Conclusion**

For the reasons set out above, the Magistrate Judge **RECOMMENDS** that DesMarais, Chambers-Smith, Hudson and Eddy's September 19, 2013 motion for judgment on the pleadings (doc. 10) be **GRANTED** and that defendant Shank's September 19, 2013 motion for judgment on the pleadings (doc. 11) be **DENIED**. The Magistrate Judge **FURTHER RECOMMENDS** that defendants DesMarais, Chambers-Smith, Hudson and Eddy be **DISMISSED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civil. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel  
United States Magistrate Judge