UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK C. BROOKES,
SUCCESSOR ADMINISTRATOR
OF THE ESTATE OF GREGORY
OTIS STAMPER, DECEASED

    Plaintiff,

    v.

DR. MYRON SHANK, M.D., *et al.*,

    Defendants.

Case No. 2:13-cv-516
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Mark C. Brookes' ("Plaintiff") Objections (ECF No. 67) to the Magistrate Judge's July 10, 2015 Summary Judgment Report and Recommendation (ECF No. 64). For the reasons that follow, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the July 10, 2015 Report and Recommendation. Accordingly, Plaintiff's Complaint is **DISMISSED**.

### I.

Plaintiff initiated this lawsuit under 42 U.S.C. § 1983, as successor administrator of the estate of Gregory Otis Stamper ("Stamper"), now deceased, by filing a Complaint (the "Complaint" or "Compl.") on May 29, 2013 (ECF No. 1). Specifically, Plaintiff alleges that while the deceased was a prisoner at the Allen Correctional Institution ("ACI"), defendants were deliberately indifferent to Stamper's medical needs in violation of the Eight Amendment to the United States Constitution. (Compl. ¶¶ 51-52.) On February 7, 2014, the Court adopted the Magistrate Judge's recommendation to dismiss all claims except the claim of deliberate

indifference asserted against Defendant Dr. Myron Shank, M.D. ("Dr. Shank") (ECF No. 26). On February 17, 2015, Dr. Shank filed a motion for summary judgment, asserting that no genuine issue of material fact precluded judgment in his favor, entitling him to dismissal of the case (ECF No. 42). Plaintiff opposed the motion (ECF No. 52) and the Court ordered supplemental briefing related to the cancellation of a medical appointment by Dr. Shank the day before Stamper's death (ECF Nos. 59, 60, 63). On July 10, 2015, the Magistrate Judge recommended that Dr. Shank's Motion for Summary Judgment be granted, due to Plaintiff's failure to raise a genuine issue of material fact on the remaining claim (ECF No. 64). Plaintiff timely objects to the Magistrate Judge's decision recommending summary judgment and dismissal (ECF No. 67).

## II.

### A.

The Court previously ruled that only Dr. Shank's actions for the two-year period immediately preceding the filing of the Complaint can be considered in adjudicating Plaintiff's claim (ECF Nos. 25-26). Starting in March 2008, Stamper complained of chronic pain, numbness and intermittent dizziness. (ECF No. 52-1, p. 19.) He continued to report pain, dizziness, numbness, and trouble with balance for which he received treatment, including a trip to the emergency department in February 2009. (*Id.* at 27.) In August 2009, Stamper was found guilty of a rules violation for being in the possession of medication, Neurontin (Gabapentin), and Ultram (Tramadol). He was issued a reprimand. (ECF No. 42-2, p. 23.) His prescriptions for Tramadol and Gabapentin were also cancelled, with an indication in his file that the termination was due to "cheeking" or hiding pills in his cheek rather than swallowing after ingestion. (*Id.* at 26.)

Dr. Shank treated Stamper starting in August 2009, diagnosing him with generalized sensory and motor neuropathy, prescribing a number of medications, other than Gabapentin and Tramadol, based on Stamper's diagnosis, history of cheeking, and feedback regarding how his symptoms responded. In October 2009, Stamper requested postponement of a follow-up appointment due to the pain associated with the travel required. He also refused an MRI, which he said he would reconsider, if Dr. Shank lifted certain medication restrictions. (*Id.* at 42.) In December 2009, Dr. Shank noted that Stamper had previously acknowledged selling Tramadol and Gabapentin for a bag of cookies and expressed doubt that Stamper's pain could be intolerable if he was willing to trade medicine for cookies. (*Id.* at 40, 42.) In February 2010, Stamper refused an MRI of the brain and spine but again requested Tramadol and Gabapentin for worsening pain and coordination caused by his neuropathy. Dr. Shank concluded that he could not justify the request because of Stamper's abuse of prescribed medication and unwillingness to pursue standard treatments. (*Id.* at 44-45.)

In June 2010, Stamper reported to Dr. Shank that he was receiving some benefit from the medication Indomethacin, but again requested Gabapentin, this time in crushed form (which precludes the ability to "cheek"). Dr. Shank noted that he told Stamper there would be no additional chances if Stamper misused his medication or did not cooperate with Recovery Services. Dr. Shank prescribed crushed Gabapentin, issued certain restrictions and referred Stamper to Recovery Services for evaluation and, if appropriate, monitoring. (*Id.* at 46-49.)

Stamper was interviewed by Recovery Services in July 2010. His score on the drug screen indicated "no need for service;" and he was referred to AOD educational programming (*Id.* at 64-65), a voluntary 12-week program. (Deposition of John T. Hall, ECF No. 42-7, pp. 26-27.) On March 28, 2011, Dr. Shank emailed Recovery Services and asked if Stamper had been

compliant. He received an email in response relaying that Stamper "has not been involved in any Recovery Services treatment programs to include 12 step fellowship meetings." Recovery Services told Dr. Shank that it had received Stamper's referral, but that after being screened, Stamper "wanted nothing to do with Recovery Services. He did not see himself as having a problem." (*Id*. at 61-62.)

Stamper was then evaluated in the Chronic Care Clinic on April 13, 2011 by Helen Gerhard CNP ("Gerhard"), for hypertension, hypothyroidism, hepatitis C, and hyperlipidemia. (*Id*. at 55.) At that time, Stamper was notified of new restrictions set by Dr. Shank, prohibiting unit dosages of Gabapentin in excess of 600 milligrams. Stamper responded that even his current dosage of Gabapentin was ineffective and that his prescription should just be canceled completely. (Affidavit of Helen Gerhard ¶ 17.) Gerhard noted that Stamper failed to comply with his obligations and cancelled Stamper's prescriptions for Gabapentin and Indocin until he "complied [with] contract." (ECF No. 42-2, p. 54.) On April 26, 2011, Dr. Shank noted that, according to Recovery Services, Stamper had refused to participate in the program, despite participation being a condition of continued treatment with Gabapentin. (*Id*. at 52.)

Plaintiff filed an informal complaint on May 15, 2011, requesting reinstatement of his medication. He was told that in order to have his medication reinstated, he should comply with Dr. Shank's recommendations. (*Id*. at 57.) In a notification of grievance, dated May 25, 2011, Stamper stated that he could travel because he is physically unable to make the trip without the assistance of medication, which Dr. Shank refuses to prescribe. (ECF No. 52-6.) Stamper was once again evaluated by Gerhard in the Chronic Care Clinic on May 24, 2011. He reported continued pain from neuropathy, which was spreading to his face. (ECF No. 42-2, p. 58.) Gerhard referred him to Dr. Shank, despite the fact that she saw no objective indicators of pain,

4

because "he was stating that he was in pain," and she "did not know the full extent of his neuropathy." (Deposition of Helen Gerhard, ECF No. 42-5, pp. 6, 15.)

Dr. Shank performed a chart review on May 31, 2011 and noted that "MRI is not indicated in this pt. [with] known … peripheral neuropathy. Pt. has failed, misused, or been non-complaint [with] terms of Rxs for pain. There are no additional options available. Cancel [doctor's sick call]." (ECF No. 42-2, p. 59.) The next day, Stamper was found unresponsive in his cell after having committed suicide by hanging. (*Id.* at 60.)

**B.**

If a party objects within the allotted time to a report and recommendation, 28 U.S.C. § 636(b)(1) provides that a district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

5

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

Plaintiff contends that Dr. Shank was deliberately indifferent to his medical needs in violation of the Eighth Amendment. "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain'" on an inmate by acting with "deliberate indifference" to the prisoner's serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard involves more than a complaint of mere negligence or even malpractice with regard to medical care. *Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). In addition, a prisoner's difference of opinion as to the course of treatment does not constitute deliberate indifference. *Id.* at 107.

A claim of deliberate indifference as to medical care has both an objective and a subjective component. Under the objective component, the Plaintiff must show that the medical

6

condition is "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the subjective component, the Plaintiff must show that the government actor had a "sufficiently culpable state of mind." *Id.* This means that the Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Sixth Circuit has characterized this mental state as similar to that of "subjective recklessness" in the area of criminal law. *Hadix v. Johnson,* 367 F.3d 513, 525 (6th Cir. 2004).

The Court has reviewed the record, the Magistrate Judge's Report and Recommendation and the entirety of the briefing on Plaintiff's objection to the latter. Applying the foregoing standard to this case, the Court agrees with the Magistrate Judge's conclusion that a reasonable jury could find Stamper suffered a serious medical need. As the Magistrate Judge noted, a diagnosis of neuropathy along with evidence of pain qualifies as a serious medical need. *See Ruley v. Corr. Corp. of Am.*, No. Civ. 11-36-ART, 2013 WL 1815039, at *4 (E.D. Ky. Apr. 29, 2013) (citing *Williams v. Guzman,* 346 F. App'x 102, 105 (7th Cir. 2009)). As to the subjective component, the Court also adopts the Magistrate Judge's well-reasoned opinion that the evidence supports Dr. Shank's conclusion that treatments for Stamper had failed; and Stamper had misused or been non-compliant with the agreed upon terms regarding his prescription for pain medication. (ECF No. 64, pp. 13-18.)

### A.

Plaintiff objects to the Magistrate Judge's conclusion that pain medications had failed or been misused by Stamper. Plaintiff contends that, in so holding, the Magistrate Judge resolved disputed facts in Dr. Shank's favor. Plaintiff argues that Dr. Shank knew that alternatives to traditional pain medications, such as anti-seizure medications, anti-depressants, and anti-

7

inflammatories could bring some relief to chronic pain patients. (ECF No. 52-10, pp. 517:22-518:19, 669:16-670:9.) For example, Dr. Shank knew that Indocin, an anti-inflammatory, had been previously partially successful at abating Stamper's pain. (ECF No. 42-2, pp. 307-08.) Yet, Dr. Shank stated on a chart review on May 31, 2004 that no additional options were available. (ECF No. 42-2, p. 59.)

However, there is no evidence in the record that Dr. Shank meant Stamper had exhausted the universe of available medications possible to treat neuropathy. Rather, a plain reading of Dr. Shank's notes is that: (1) an MRI is not indicated at that time; (2) Stamper has failed, misused or been non-compliant with the requisite terms to be given pain medication, and, absent either an MRI or medication, no additional treatment options were available. These conclusions do not rise to the level of deliberate indifference. "In a prison setting, the decision to discontinue a pain medication because of concerns of abuse of such medication does not amount to deliberate indifference to serious medical needs." *Atakpu v. Lawson*, No. 1:05-cv-0052, 2008 WL 5233467, at *11 (S.D. Ohio Dec. 11, 2008). Furthermore, even if Dr. Shanks' decision not to order an MRI or prescribe alternate pain medication was medically unsound, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); *see also Brooks v. Celeste,* 39 F.3d 125 (6th Cir.1994). Instead, Plaintiff must show that Dr. Shanks recklessly disregarded Stamper's well-being. This burden is not satisfied where Dr. Shanks had reasonably concluded that medications had failed and Stamper had misused medication.

8

**B.**

Plaintiff also objects to the Magistrate Judge's finding that Stamper had not complied with his agreement with Dr. Shank to participate in Recovery Services. In June 2010, Dr. Shank's medication order required Stamper to attend a consult with Recovery Services. (ECF No. 42-2, p. 46.) Stamper claims he attended the consultation and was told he was at extremely low risk for addiction and, therefore, not eligible for a mandatory Recovery Services program. (ECF No. 42-7, pp. 28:17-23, 33:13-17, 35:3-11, 35:6-7, 42:9-11.) He also states he declined to attend voluntary programming due to the difficulty of sitting through classes while in severe pain. (ECF No. 52-1, p. 81.) As a result, Plaintiff contends, a reasonable jury could conclude that Stamper fulfilled his obligations. But, the relevant question is not whether a reasonable fact-finder would conclude that Stamper fulfilled his obligations. The question is whether Dr. Shank relied upon a reasonable belief of non-compliance. The alleged non-compliance is relevant toward the question of Dr. Shank's subjective recklessness. Therefore, it is Dr. Shank's subjective beliefs that are at issue. Dr. Shank inquired and was informed that Stamper had not "been complaint with Recovery Services." (ECF No. 42-2, p. 62.) Specifically, Dr. Shank was told that Stamper had been referred and screened, but "he wanted nothing to do with Recovery Services" because he "did not see himself as having a problem." (*Id.* at 61.) Dr. Shank's reliance on a report from Recovery Services that Stamper had not complied does not create a genuine issue of material fact as to deliberate indifference.

**C.**

Plaintiff additionally argues that Dr. Shank adopted strict policies for prescribing pain medication to inmates after he was investigated for overprescribing pain medication, and that he did so in order to bolster his image before the medical board. Plaintiff objects to the Magistrate

Judge's finding that, even if these allegations were true, the evidence still does not demonstrate deliberate indifference. Fatal to Plaintiff's argument is the fact that, even if Dr. Shank had been wrongfully motivated, medical malpractice alone is insufficient to establish liability. *Durham v. Nu'Man,* 97 F.3d 862, 868 (6th Cir.1996). Rather, the defendants' conduct "must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.), *cert. denied,* 513 U.S. 873, 115 S. Ct. 199, 130 L.Ed.2d 130 (1994). Thus, prison officials "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844, 114 S. Ct. 1970, 1982–83, 128 L.Ed.2d 811 (1994). The fact that Dr. Shank may have been under-prescribing pain medication does not equate to an intent to punish, where, as here, there were subjectively legitimate reasons to deny medication and an MRI to Stamper on May 31, 2011.

## IV.

For the foregoing reasons, Court **OVERRULES** Plaintiff's Objections, (ECF. No. 67), and **ADOPTS** the July 10, 2015 Summary Judgment Report and Recommendation (ECF No. 64). Accordingly, Plaintiff's claims are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

9-4-2015
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT CHIEF JUDGE